PHILLIPS et al., Appellees,

v.

RAYBURN, Appellant.

[Cite as *Phillips v. Rayburn* (1996), 113 Ohio App.3d 374.]

Court of Appeals of Ohio,
Fourth District, Hocking County.

No. 95 CA 26.

Decided Aug. 9, 1996.

*O'Brien & Lease Co., L.P.A.,* and *Charles H. Lease,* for appellees.

*Dagger, Johnston, Miller, Ogilvie & Hampson* and *Randy L. Happeney,* for appellant.

---

PETER B. ABELE, Judge.

This is an appeal from a summary judgment entered by the Hocking County Common Pleas Court in favor of David L. Phillips et al., plaintiffs-appellees, and against James H. Rayburn, defendant-appellant.

Appellant assigns the following errors:

First Assignment of Error:

"Appellant's conviction for aggravated assault was mere evidence in this civil action. It was not res judicata/collateral estoppel as to the issues raised in this civil cause and therefore summary judgment was inappropriate because questions of fact existed for determination by the jury."

Second Assignment of Error:

"A conviction for aggravated assault does not establish an intent to injure, thus making summary judgment inappropriate."

The pertinent facts are not in dispute. On August 11, 1994, appellant Rayburn shot appellee David L. Phillips multiple times during an altercation that arose near the property line dividing their respective parcels in Hocking County, Ohio. Appellant was tried and convicted of aggravated assault for shooting appellee David L. Phillips. Appellee and his wife thereafter filed a civil action alleging assault, battery, intentional infliction of emotional distress, and loss of consortium.

On April 11, 1995, appellees filed a motion for summary judgment alleging that no genuine issues of material fact existed with respect to liability because the transcript from appellant's criminal trial clearly shows (1) appellant shot and wounded appellee, and (2) appellant's evidence of self-defense is insufficient to meet the appropriate legal standard. Appellees attached to their motion four uncertified photocopies excerpted from appellant's criminal trial transcript. Appellees did not attach any evidence of appellant's conviction.

On May 24, 1995, the trial court granted summary judgment to appellees on the issue of liability. In its entry, the trial court wrote as follows:

"The court finds that the final transcript was filed as averred by the plaintiff, that there exists no genuine issue as to any material facts in the matter, the jury having found unanimously that the defendant committed felony assault against the plaintiff beyond a reasonable doubt."

The court then held a bench trial to determine damages. The court entered judgment on damages on December 6, 1995. Appellant filed a timely notice of appeal.

## I

In his first assignment of error, appellant argues that the trial court erred when it granted summary judgment to appellees. Appellant asserts that while his conviction for aggravated assault may be admitted as evidence under Evid.R. 803(21), the conviction is not a prior adjudication of his intent, and therefore does not conclusively resolve liability. In other words, appellant concludes that his conviction does not collaterally estop him from disclaiming intent to harm appellee.

We note that summary judgment is appropriate when the movant demonstrates that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, said party being entitled to have the evidence construed most strongly in his favor. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 339–340, 617 N.E.2d 1123, 1126; *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, 884; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. The moving party bears the burden of proving no genuine issue of material fact exists. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801.

When reviewing a summary judgment, an appellate court must independently review the record to determine if summary judgment was appropriate. An

appellate court need not defer to the trial court's decision in summary judgment cases. See *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 599 N.E.2d 786.

■ Civ.R. 56(C) lists the types of documentary evidence admissible in summary judgment proceedings:

" * * * Summary judgment shall be rendered forthwith if the pleading, *depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any,* timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * " (Emphasis added.)

In the case *sub judice,* we note that appellees' motion for summary judgment did not include any evidence of appellant's conviction. The only supporting documents attached to the motion were four pages of photocopied testimony excerpted from the aggravated assault trial transcript. As noted above, Civ.R. 56(C) states that when determining summary judgment motions, courts may consider only the "pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact." Appellees' documents do not fall into any of the Civ.R. 56(C) categories.

■ We also note, however, that appellant did not object to the fact that the transcript excerpt does not fall into any of the Civ.R. 56(C) categories. By failing to object at the trial level, appellant has waived any error on appeal. See, generally, *Dillon v. Med. Ctr. Hosp.* (1993), 98 Ohio App.3d 510, 648 N.E.2d 1375; *Boydston v. Norfolk S. Corp.* (1991), 73 Ohio App.3d 727, 598 N.E.2d 171; *Gaumont v. Emery Air Freight Corp.* (1989), 61 Ohio App.3d 277, 572 N.E.2d 747; *Rodger v. McDonald's Restaurants of Ohio, Inc.* (1982), 8 Ohio App.3d 256, 8 OBR 347, 456 N.E.2d 1262; *Richards v. Paterek* (Dec. 1, 1989), Geauga App. No. 88–G–1481, unreported, 1989 WL 146429; *Rambo v. E.B.P., Inc.* (Oct. 19, 1989), Cuyahoga App. No. 55658, unreported, 1989 WL 125149.

■ Regarding the judgment of conviction, appellees should have presented the judgment entry to the trial court by incorporating it into an affidavit pursuant to Civ.R. 56. *Biskupich v. Westbay Manor Nursing Home* (1986), 33 Ohio App.3d 220, 515 N.E.2d 632; *Freeman v. Holzer Med. Ctr.* (Mar. 26, 1992), Gallia App. No. 91 CA 8, unreported, 1992 WL 79583; *Bartels v. Syracuse* (June 7, 1991), Meigs App. No. 448, unreported, 1991 WL 110010. By failing to present the judgment in an appropriate form, appellees deprived the trial court of any evidence of appellant's conviction. Further, while the trial court's May 24, 1995 judgment entry arguably attempts to take judicial notice of appellant's conviction,

we note that the trial court lacked the authority to take judicial notice of its own records in another case.[1]

■ Because the court had no evidence before it of appellant's conviction and because of additional reasons set forth below, we agree with appellant's assertion that summary judgment was improper in the case *sub judice.* The primary issue for the trial court when considering an intentional tort is intent to harm. The court's judgment entry suggests that the court granted partial summary judgment on collateral estoppel grounds, based on the criminal trial adjudication of appellant's intent during the attack. As noted above, we find that summary judgment was improper because no evidence of the prior adjudication was before the court in any form.

■ Assuming, *arguendo,* that the judgment of conviction from appellant's criminal trial had been properly submitted to the trial court, we are inclined to agree with appellant that it would have constituted some evidence of his intent during the attack rather than collaterally estopping him from contesting the intent issue at all. In Ohio, *res judicata* encompasses both estoppel by judgment and collateral estoppel. *State ex rel. Kirby v. S.G. Loewendick & Sons, Inc.* (1992), 64 Ohio St.3d 433, 437, 596 N.E.2d 460, 463. Estoppel by judgment prevents a party from relitigating the same cause of action after a final judgment has been rendered on the merits as to that party. *Krahn v. Kinney* (1989), 43 Ohio St.3d 103, 107, 538 N.E.2d 1058, 1062. Collateral estoppel prevents parties or their privies from relitigating facts and issues in a subsequent suit that were

---

1.  Evid.R. 201(B) provides as follows:
    "KINDS OF FACTS. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."
    Whether appellant had been convicted of aggravated assault in a prior proceeding before the trial court would of course be a matter of record. However, it is well established in Ohio that trial courts may not take judicial notice of their own proceedings in other cases even when the cases involve the same parties. *State ex rel. Crow v. Weygandt* (1959), 170 Ohio St. 81, 9 O.O.2d 478, 162 N.E.2d 845; *Myers v. State* (1889), 46 Ohio St. 473, 22 N.E. 43; *Diversified Mtge. Investors, Inc. v. Bd. of Revision* (1982), 7 Ohio App.3d 157, 7 OBR 201, 454 N.E.2d 1330; *Hamilton v. Ohio State Bank & Trust Co.* (1925), 20 Ohio App. 493, 152 N.E. 731; *Kerns v. Mansfield* (Dec. 15, 1989), Logan App. No. 8-87-20, unreported, 1989 WL 153596. Therefore, even if we were to assume that the court in the case *sub judice* intended to take judicial notice of appellant's aggravated assault conviction, it would have been error for the court to do so. See *State v. Bialek* (Feb. 17, 1992), Montgomery App. No. 12323, unreported, 1992 WL 28146, in which the appellate court noted that adoption of Evid.R. 201 has not modified the foregoing precedent.
    The rationale for these holdings is that when judicial notice is taken of prior proceedings, such prior proceedings are not part of the record as defined in App.R. 9, and whether the trial court correctly interpreted such prior proceedings is not reviewable by the appellate court. *Accord v. Accord* (Apr. 22, 1981), Pike App. No. 329, unreported.

fully litigated in a previous suit. *Thompson v. Wing* (1994), 70 Ohio St.3d 176, 183, 637 N.E.2d 917, 923.

As the Ohio Supreme Court stated in *Broz v. Winland* (1994), 68 Ohio St.3d 521, 629 N.E.2d 395:

" 'The main legal thread which runs throughout the determination of the applicability of res judicata, inclusive of the adjunct principle of collateral estoppel, is the necessity of a fair opportunity to fully litigate and to be 'heard' in the due process sense.' " *Id.* at 523, 629 N.E.2d at 397, quoting *Goodson v. McDonough Power Equip., Inc.* (1983), 2 Ohio St.3d 193, 200–201, 2 OBR 732, 738–740, 443 N.E.2d 978, 985.

The Ohio Supreme Court has also held that mutuality of parties is a prerequisite to collateral estoppel. *Whitehead v. Gen. Tel. Co. of Ohio* (1969), 20 Ohio St.2d 108, 49 O.O.2d 435, 254 N.E.2d 10; *Goodson, supra.* In *Goodson,* the Ohio Supreme Court restated this general rule, noting as follows:

"[A]s a general principle, collateral estoppel operates only where all of the parties to the present proceeding were bound by the prior judgment. * * * A prior judgment estops a party, or a person in privity with him, from subsequently relitigating the identical issue raised in the prior action." 2 Ohio St.3d 193, 2 OBR 732, 443 N.E.2d 978, paragraph one of the syllabus.

We note that appellees were not parties to the criminal trial. More important, they would not have been bound by the prior judgment. Thus, had appellant been acquitted at his criminal trial, appellees would still have been free to bring their cause of action. While the Ohio Supreme Court has subsequently suggested that the strict mutuality of parties requirement may be relaxed in the interest of justice, see *In re Gilbraith* (1987), 32 Ohio St.3d 127, 131, 512 N.E.2d 956, 961, we see no reason to so relax the requirement in this case.

We also note that even if we were inclined to relax the mutuality requirement, collateral estoppel would not necessarily apply. Federal cases dealing with this issue suggest that the preclusive effect of a criminal conviction is determined by state law.[2] *United States v. Turner* (C.A.4, 1991), 933 F.2d 240, 243, fn. 2; *Kowalski v. Gagne* (C.A.1, 1990), 914 F.2d 299, 302–304. This court

---

2. See 4 Weinstein & Berger, Weinstein's Evidence (1984), paragraph 803(22)[01]:

"Rule 803(22) [the federal equivalent of Ohio Evid.R. 803(21) ] does not by its terms make the prior conviction conclusive evidence of the facts necessarily determined in the first action. This is in accord with the majority position, and would allow the defendant to come forth with a satisfactory explanation. However, Rule 803(22) is a procedural rule, and there is some authority to suggest that in particular types of cases a jurisdiction may, as a matter of substantive policy, make the prior conviction determinative." *Id.* at 803–356 through 803–357. See, also, Graham, Federal Practice and Procedure (1992 Interim Ed.) 723, Section 6773.

has previously addressed whether, under Ohio law, evidence of a criminal conviction admitted under Evid.R. 803(21) has preclusive effect. In *Hickman v. Kraft* (Sept. 26, 1985), Pickaway App. No. 84 CA 2, unreported, 1985 WL 11160, we wrote as follows:

"Evidence offered pursuant to Evid.R. 803(21) is not conclusive of the fact sought to be proved, and the opponent may explain the prior conviction and may offer any evidence rebutting the fact sought to be proved by the proponent." *Id.*, citing Weissenberger's Ohio Evidence (1985), Sections 803.254–5 (1985). See, also, Weissenberger's Ohio Evidence (1996), Sections 803.254, 803.256, 803.258.

Thus, the conviction may be admitted into evidence and accorded whatever weight the factfinder deems appropriate. It does not, however, preclude additional litigation involving the facts and legal issues underlying the conviction. We recognize, of course, that the conviction will likely be very strong evidence in most instances. Nevertheless, the party against whom the evidence is admitted should have an opportunity to offer evidence rebutting the inference provided by the conviction.

We acknowledge that this stance is somewhat contrary to the trend in the federal courts. See *Kowalski, supra*, 914 F.2d at 302, citing *Aetna Cas. & Sur. Co. v. Niziolek* (1985), 395 Mass. 737, 481 N.E.2d 1356; *King v. Prudential Prop. & Cas. Ins. Co.* (D.N.H.1988), 684 F.Supp. 347; *Lettsome v. Waggoner* (D.V.I. 1987), 672 F.Supp. 858; *Bressan Export–Import Co. v. Conlew* (E.D.Pa.1972), 346 F.Supp. 683. See, also, *Griffin v. Parker* (1990), 22 Conn.App. 610, 579 A.2d 532, reversed on other grounds (1991), 219 Conn. 363, 593 A.2d 124; *D'Arata v. New York Cent. Mut. Fire Ins.* (1990), 76 N.Y.2d 659, 563 N.Y.S.2d 24, 564 N.E.2d 634; *Lee v. Knight* (Okla.1989), 771 P.2d 1003; *Aubert v. Aubert* (1987), 129 N.H. 422, 529 A.2d 909. The authors of a leading treatise on federal practice write that federal courts now frequently allow private party plaintiffs in civil actions to use issue preclusion offensively against former criminal defendants. See 19 Wright, Miller & Cooper, Federal Practice and Procedure (1982) 748–755, Section 4474. The authors go on to say that the federal trend has been to abandon the mutuality requirement discussed earlier. *Id.* at 753, Section 4474. The American Law Institute's Restatement of Judgments 2d (1982) suggests a similar result. See Section 85 and Comment *e*, at 298–299.

This court is not prepared to follow the trend suggested by these authorities. We have reviewed the arguments carefully and find that the advantages gained by preclusion do not outweigh the risks inherent in allowing a criminal conviction to bind a defendant in a subsequent civil suit based on the same conduct. Procedural and discovery differences between the criminal and civil forums coupled with the defendant's dilemma over whether to testify in his own behalf or present any defense at the criminal trial make preclusion in this

instance a precarious and, we believe, unwise practice. The conviction is, of course, valuable probative evidence to an aggrieved plaintiff and should be admissible. Similarly, testimony adduced at the criminal trial may be considered in the civil case when properly submitted. In the interest of fairness, however, we feel the defendant to the tort must be afforded an opportunity to present evidence rebutting or explaining the criminal conviction.

Accordingly, based upon the foregoing reasons, appellant's first assignment of error is sustained and the cause is remanded for further proceedings consistent with this opinion.

## II

In his second assignment of error, appellant argues that the intent proven in his aggravated assault conviction falls short of that needed to succeed in an intentional tort case, thus making summary judgment inappropriate, citing *Wiggins v. Hampton* (1992), 78 Ohio App.3d 669, 605 N.E.2d 1264, appellant argues that his criminal conviction for aggravated assault did not require the state to prove a *mens rea* of purpose. Therefore, according to appellant, even if collateral estoppel generally applies in civil proceedings brought subsequent to criminal convictions, the issue of intent for intentional tort purposes is not precluded in this case because the mental state proven in the previous case falls short of that needed to succeed here.

Initially, we note that our ruling on appellant's first assignment of error (*i.e.,* that collateral estoppel does not apply in civil tort actions based on the same conduct proven in a prior criminal trial) makes it unlikely that the issue raised by appellant's second assignment of error will arise. We note, however, that we are inclined to disagree with appellant that the *mens rea* element of knowledge, when proven beyond a reasonable doubt, falls short of the mental state required by intentional tort doctrine.

R.C. 2903.12 defines aggravated assault. It provides:

"(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall *knowingly*:

"(1) Cause serious physical harm to another;

"(2) Cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code." (Emphasis added.)

R.C. 2901.22 defines culpable mental states under Ohio law. It provides:

"(A) A person acts purposely *when it is his specific intention to cause a certain result,* or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.

"(B) A person acts knowingly, regardless of his purpose, *when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature.* A person has knowledge of circumstances when he is aware that such circumstances probably exist." (Emphasis added.)

Thus, a conviction for aggravated assault requires the prosecution to show that a defendant knowingly caused serious physical harm (or attempted to do so with a deadly weapon or dangerous ordnance), meaning that the defendant acted while aware that his conduct would probably cause a certain result or would probably be of a certain nature. This mental state is different from purpose, which requires that the defendant specifically intend to cause the result rather than simply be aware of the result's probability. R.C. 2901.22(A).

The Ohio Supreme Court has rejected the proposition that a specific intent to injure is a necessary prerequisite to a finding of intentional misconduct. In *Jones v. VIP Dev. Co.* (1984), 15 Ohio St.3d 90, 94–95, 15 OBR 246, 250, 472 N.E.2d 1046, 1051, the court wrote as follows:

"Our task today is to examine the concept of intent for purposes of clarifying what constitutes an intentional tort. More specifically, we propose to determine whether conduct which lacks a specific intent to injure can properly be termed intentional. For the following reasons, we believe it can.

" 'The intent with which tort liability is concerned is not necessarily a hostile intent, or a desire to do any harm. Rather it is an intent to bring about a result which will invade the interests of another in a way the law forbids. * * *' Prosser & Keeton, Law of Torts (5 Ed.1984) 36, Section 8. However, 'intent is broader than a desire or purpose to bring about physical results. It extends not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what the actor does. * * *' *Id.* at 35. See, also, *Payne v. Vance* (1921), 103 Ohio St. 59, 69 [133 N.E. 85, 88]."

Thus, an intentional tort is an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur. See *Jones, supra,* paragraph one of the syllabus; 1 Restatement of the Law 2d, Torts (1965) 15, Section 8A. Because the Ohio Supreme Court has rejected the proposition that a specific intent to injure is a necessary prerequisite to a finding of intentional misconduct, we do not agree with appellant that his conviction for aggravated assault, which involves knowingly causing serious harm, falls short of showing intent as contemplated by intentional tort doctrine.

Accordingly, based on our disposition of appellant's first assignment of error, the judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

STEPHENSON and KLINE, JJ., concur.